*Charles L. Nutter and Helen D. Nutter v. Commissioner. Nutter v. Commissioner
Docket No. 6608.
United States Tax Court
1946 Tax Ct. Memo LEXIS 298; 5 T.C.M. (CCH) 4; T.C.M. (RIA) 46007; January 7, 1946
*298 Gross income: Compromise of indebtedness to bank. - Capital gain was not realized from a transaction in which taxpayer assigned to a bank securities which the bank held as collateral on his loan in settlement of his obligations to the bank. W. A. Seifert, Esq., 747 Union Trust Bldg., Pittsburgh, Pa., and Sidney B. Gambill, Esq., for the petitioners. Karl W. Windhorst, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: This proceeding involves a deficiency of $1,707.91 in petitioners' income tax for 1941. Petitioners allege that respondent erred in determining that they realized a capital gain from a transaction in which petitioner Charles L. Nutter assigned to a bank securities which the bank held as collateral on his loan in settlement of his obligations to the bank. Petitioners contend that the transaction resulted in a capital loss. Some of the facts have been stipulated. [The Facts] Petitioner Helen D. Nutter is the wife of petitioner Charles L. Nutter and filed a joint return with him for 1941. The term petitioner as hereinafter used will refer to Charles L. Nutter. Petitioner is a resident of Pittsburgh, Pa. He filed his return *299 for the taxable year 1941 with the collector of internal revenue for the twenty-third district of Pennsylvania, at Pittsburgh. During the years 1925 to 1929, inclusive, petitioner purchased various stocks and other securities at an aggregate cost of $110,045.05. In negotiating the purchases he obtained loans from the First Portland National Bank of Portland, Maine, giving his promissory notes to the bank and pledging the purchased securities as collateral thereon. There was a balance due the bank on such notes on September 20, 1941, of $85,104.60. The collateral originally deposited with the bank included the above securities and had cost the petitioner $110,045.05. A portion thereof, having a cost of $33,076.56, had become worthless prior to 1941. The bank had previously sold some other collateral, as it was authorized to do under its agreement with petitioner, and had applied the proceeds of such sales to petitioner's indebtedness. The remaining collateral had a very much depreciated value and was actually worth only a small portion of the amount of petitioner's indebtedness to the bank. Petitioner was insolvent and was unable to make any substantial payment on the indebtedness. *300 The bank officers had often discussed with the petitioner the matter of making some settlement of his obligation. On August 21, 1941, the bank wrote petitioner as follows: In reply to your letter of the 18th concerning settlement of your obligations now held by this Bank, the principal amount aggregating approximately $85,104.60, without reference to accrued interest, if you will submit an offer of approximately 10% of the amount of the indebtedness, say $8,500.00 with $1,000.00 cash payment and your unsecured demand note for $7,500.00 bearing interest at 2%, and agree to release without restrictions all collateral now held by us against your obligations, we will present the subject to our Directors for action. Petitioner refused to make such an offer but made a counter offer to assign over to the bank all of the securities which it held as collateral on his notes and to pay the bank $1,000 cash in settlement of his indebtedness. The bank accepted petitioner's offer by letter dated September 15, 1941. On September 20, 1941, petitioner transmitted to the bank an assignment of all of the securities which the bank then held as collateral on his notes, together with $1,000 cash which *301 he borrowed from his wife. His notes for the unpaid principal of $85,104.60 were then released to him by the bank and were cancelled. Just prior to petitioner's settlement of his obligations to the bank his liabilities exceeded his assets by the amount of $62,537.11. In his return for 1941 petitioner claimed the deduction of a long-term capital loss of $13,029.72 which respondent disallowed. Respondent determined, on the other hand, that petitioner realized a long-term capital gain on the transaction of $7,136.11. The petitioner's and the respondent's computations were as follows: Petitioner
Respondent
Cost of securities
$110,164.05
$76,968.49
Selling price
84,104.60
84,104.60
Long-term capital gain
(loss)
(26,059.45)
7,136.11
The total cost of $110,164.05 shown in petitioner's computation has been corrected by stipulation to $110,045.05. The alleged selling price of $84,104.60 used in both computations was the amount of petitioner's indebtedness to the bank on September 20, 1941, $85,104.60, exclusive of accrued interest, less the cash payment of $1,000 which petitioner made to the bank in the transaction. The total cost of $76,968.49 used in *302 respondent's computation represents the cost of all the securities pledged with the bank, $110,045.05, less the cost of those which became worthless prior to 1941, in the amount of $33,076.56. By an amended petition filed at the hearing petitioner asserts that he sustained a loss on the transaction of $64,128.29 representing the difference between the cost of the "non-worthless" securities transferred to the bank, $76,968.49, and the alleged fair market value of the securities at that time, $12,840.20. [Opinion] We first consider the respondent's contention that the petitioner derived a longterm capital gain from the transaction whereby his indebtedness to the bank was satisfied in 1941. Prior to the settlement the petitioner owed the bank $85,104.60, plus several years' accrued interest. He was hopelessly insolvent. He owned practically no property besides collateral held by the bank as security upon his indebtedness which had a value of only $17,090.20. Although this collateral was the property of the petitioner the bank had a death grip upon it. The petitioner could not recover it without paying his indebtedness to the bank, which he was unable to do. Upon relinquishing *303 all claim to the collateral and by the payment of $1,000 the petitioner was released from his debts. If the petitioner had gone through bankruptcy and been released from his debts he clearly would not have received taxable income. We can not see how in truth the situation here is different. Upon the settlement the petitioner received neither cash nor property that was the equivalent of cash. Aside from a release from his indebtedness the petitioner was no richer after the settlement than before. We think, therefore, that the respondent erred in his determination that the petitioner had a long-term capital gain from the transaction. In our opinion this case is within the ambit of , in which it was held that the American Dental Co. did not derive taxable income where creditors compromised claims for interest and rents at less than face value, although the taxpayer was solvent and in prior years had obtained the benefit of deducting from gross income in returns made on the accrual basis the full amount of the interest and rents which had accrued, a part of which was cancelled. That case illustrates the realistic approach which *304 the Supreme Court gives to this type of case. Substance rather than form must control the decision. Judged by that standard we are of the opinion that the petitioner had no long-term capital gain from the settlement of his indebtedness to the bank in 1941. We next consider the contention of the petitioner that he sustained a long-term capital loss from the settlement. He owed the bank $85,104.60, plus several years of accrued interest. The bank held as security "non-worthless" securities of the petitioner which had cost him $76,968.49 but which had a fair market value of $17,090.20. Under the settlement he relinquished his claim to this collateral and paid the bank $1,000 in settlement of his indebtedness. Any claimed loss based upon the cost of his consideration and the $1,000 cash payment was more than offset by the amount of the indebtedness cancelled. In this situation we think that the respondent was correct in disallowing petitioner's claim for any longterm capital loss upon the settlement. Decision will be entered under Rule 50. Footnotes
*. This memorandum opinion is superseded by Dec. 15,302.—CCH.↩